IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DEAFUEH MONBO and TAJE MONBO, | * | |
| Creditors | * | |
|     *Appellants* | * | |
| | * | Civil Action No. CCB-19-3565 |
| v. | * | |
| | * | |
| ERIC J. BLAIR, Debtor | * | |
|     *Appellee* | * | |

**MEMORANDUM**

Deafueh Monbo and Taje Monbo appeal the bankruptcy court's order denying the motion to dismiss Eric J. Blair's Chapter 7 case (ECF 2-47), and the order denying the motion to extend time to object to discharge (ECF 2-48). The issues have been fully briefed and no hearing is necessary. Because the bankruptcy court properly applied the law to a thoroughly developed factual record, the Monbos' appeal will be denied and the bankruptcy court's Orders entered December 9, 2019, will be affirmed.

**FACTS AND PROCEDURAL HISTORY**

The bankruptcy court's December 9, 2019, order denying the motion to dismiss provides a comprehensive and thorough discussion of the factual findings made by Bankruptcy Judge Michelle Harner following an evidentiary hearing held on July 17, 2019, and October 18, 2019. For the sake of completeness, the most relevant facts are recounted here.

Eric J. Blair filed for Chapter 7 bankruptcy on January 28, 2019. Prior to the filing, Blair was named as a defendant in a civil lawsuit in the U.S. District Court for the Eastern District of New York brought by Deafueh Monbo and Taje Monbo, alleging wrongful conduct including copyright infringement. The Monbos, as creditors, seek to dismiss the Chapter 7 case.

Blair is the owner of Mission Film Inc. ("MFI"), a Maryland corporation, which Blair operated from 2000–2012 until its charter was forfeited by the Maryland Department of Assessment and Taxation. Blair reinstated MFI in 2014 to permit him to cash a check for a small project completed for

1

Carroll County that year, and it was forfeited again in 2015. MFI currently has no operations, employees, or assets.[1]

Blair was one of several producers of a feature film titled *12 O'Clock Boys*, and invested $8,600 in the film. Blair worked on the film for three days, primarily using a "Phantom Camera" to facilitate slow motion filming. It is not clear from the bankruptcy court's opinion when Blair worked on the film. Blair stated that neither he nor MFI received any money from the film, and there is no evidence to contradict this.

Blair failed to disclose certain information in his bankruptcy papers. He failed to disclose the existence of MFI and websites he owned or used, and provided incomplete information regarding the Monbos' lawsuit against him. Additionally, he failed to disclose Taje Monbo's address on the creditor matrix. Blair explained that he provided information to his counsel in a two-hour interview, and then signed, but did not review, the completed papers. He did not believe that any domain names were still active, and had told counsel that he closed down MFI in 2012, although he did not tell counsel about the 2014 reinstatement and subsequent forfeiture.

Based on Blair's bankruptcy schedules, Blair had $3,321 in secured debt, $96,045 in unsecured debt, and assets in the amount of $8,197.38. This does not include the Monbos' claim against Blair, which is disputed, unliquidated, and contingent and thus has no specific identified value. There are 27 scheduled creditors in the bankruptcy case, including the Monbos. Blair stated that he contemplated filing for bankruptcy prior to the Monbos' lawsuit, and denied filing the bankruptcy case solely because of the lawsuit.

The Monbos moved to dismiss the Chapter 7 filing under Section 707(a) and 707(b)(3) of the Bankruptcy Code. The Monbos generally alleged that Blair had filed for Chapter 7 bankruptcy in bad

---

[1] The Monbos presented at the hearing Blair's LinkedIn and Facebook pages, which contain references suggesting that Blair continues to work for MFI, but they did not present any evidence to contradict Blair's testimony that he no longer actively operates MFI and that there are no revenue or assets associated with MFI. Blair stated that he does not maintain or regularly check these online platforms.

faith. As to the Section 707(b)(3)[2] claim, the bankruptcy court found that the Monbos did not have standing. This was because Blair's income was below the median income for the state, and therefore under Section 707(b)(6), "[o]nly the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b)[.]" 11 U.S.C. § 707(b)(6).

As to the Section 707(a)[3] claim, the court found that there was not enough evidence to show bad faith. The court found that, factually, Blair had not filed for bankruptcy solely to avoid paying the Monbos and, legally, even if he had it would not constitute bad faith. The court found that none of Blair's omissions from his bankruptcy filings were material, and that, although the Monbos argued that Blair made more money than he disclosed, they provided no evidence to support this, nor was there evidence to show that MFI had continuing business operations.

The Monbos also moved to extend time to object to the discharge of Blair,[4] on the basis that Taje Monbo lacked actual notice of the bankruptcy case because only his name and not his correct address was listed on the creditor matrix.[5] After Blair filed the bankruptcy case, the Bankruptcy Noticing Center mailed notice to all creditors listed on the creditor matrix, including Deafueh Monbo, on January 31, 2019. Deafueh Monbo received notice of the case on or about February 26, 2019. The

---

[2] Section 707(b)(1) provides that the court may dismiss a case "if it finds that the granting of relief would be an abuse of the provisions of this chapter" and Section 707(b)(3) provides that the court should consider "whether the debtor filed the petition in bad faith" or whether the totality of the circumstances of the debtor's financial situation demonstrate abuse.

[3] Section 707(a) provides:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

Because Section 707(a) is open-ended, courts have found that a case may also be dismissed under Section 707(a) for bad faith. *See Janvey v. Romero*, 883 F.3d 406, 412 (4th Cir. 2018) (collecting cases and adopting the majority view that "a debtor's bad faith in filing may constitute cause for dismissal under § 707(a)"); *see also In re Minick*, 588 B.R. 772, 775 (Bankr. W.D. Va. 2018).

[4] The deadline for objecting to the discharge was May 6, 2019.

[5] Taje Monbo was listed in the creditor matrix but together with Deafueh Monbo and only her address was provided. (ECF 2-1 at 49, Creditor Matrix).

3

court found that, although the notice was not mailed to Taje Monbo, he had actual knowledge of the case at least as of March 4, 2019, when the Monbos' attorneys filed a suggestion of bankruptcy in the civil litigation in which the Monbos are joint plaintiffs. The suggestion of bankruptcy noted that Deafueh Monbo had received the notice of bankruptcy filing, and the suggestion was filed by "Attorney for Plaintiffs Taje Monbo and Deafueh Monbo." Therefore, as the suggestion was filed on behalf of Taje Monbo and Deafueh Monbo, the court found that Taje Monbo had actual knowledge of the bankruptcy filing as of at least March 4, 2019.

Further, the court found that the Monbos had not shown that they exercised all reasonable diligence in attempting to file an objection to discharge, as Deafueh Monbo chose not to attend the section 341 meeting of creditors, and the Monbos had not taken any discovery, despite having commenced contested matters by filing the motion to dismiss and the motion for extension of time. Additionally, there were no allegations that Blair failed to provide them any requested information or delayed their efforts. The court therefore denied the motion to extend time.

## DISCUSSION

In considering an appeal of a bankruptcy court's ruling, a district court reviews findings of fact for clear error and conclusions of law under a de novo standard. *In re Tudor Assoc., Ltd.*, 20 F.3d 115, 119 (4th Cir. 1994).

    I.    Order on motion to dismiss

        a.    Section 707(b)(3)

Whether the Monbos have standing to move to dismiss Blair's bankruptcy case under Section 707(b)(3) is a question of law that the court reviews de novo. As discussed above, Section 707(b)(6) limits who may bring a claim under Section 707(b) when the debtor's income is less than the median income in the state. In such cases, "[o]nly the judge or United States trustee (or bankruptcy administrator, if any) may file a motion under section 707(b)[.]" 11 U.S.C. § 707(b)(6); *see In re Hiller*, 482 B.R. 462, 469 (Bankr. D. Mass. 2012) ("Recourse to § 707(b) is limited. One such

4

limitation is that when the debtor is a so-called 'below-median debtor,' only the judge or the United States trustee may file a motion to dismiss under § 707(b).").

The bankruptcy court found that the debtor was a below-median debtor. The Monbos do not appear to contest this in their brief, instead arguing the merits of their Section 707(b)(3) motion. They also have not provided evidence that Blair has more income than he disclosed. As such, the court agrees with the bankruptcy court that the Monbos lack standing to file a motion under Section 707(b).

      b. Section 707(a)

The Monbos argue that the bankruptcy court erred in not dismissing Blair's bankruptcy filing as a bad faith filing, given that he "misrepresented and omitted twenty-two items on his bankruptcy schedule[.]" (ECF 4, Appellant's Brief at 19). A list of these twenty-two alleged misrepresentations and omissions were included as an exhibit to the Monbos' post-hearing brief in bankruptcy court (ECF 2-43) and also attached as an exhibit to their appellant's brief in this court. Most of the omissions concern Blair's failure to disclose information related to MFI. Specifically, the Monbos argue that Blair failed to include his business income from his film production companies and failed to include in his Statement of Financial Affairs information about his businesses, and also filed bankruptcy solely in response to the infringement lawsuit.

"In ascertaining the debtor's lack of good faith the court should apply a totality of the facts and circumstances test." *In re Marino*, 388 B.R. 679, 682 (Bankr. E.D.N.C. 2008). *Marino* lists 14 factors that could be considered, and the Monbos state that four are present here. They are: that "[t]he debtor failed to make candid and full disclosure"; "Debtor filed the case in response to a Judgment pending litigation"; "The unfairness of the use of Chapter 7"; and "There are . . . other procedural 'gymnastics.'" *See id.* (citation omitted); *see also* Appellant's Brief at 26–27. The Monbos also cite to *In re Green*, 934 F.2d 568, 572 (4th Cir. 1991), involving an allegation of substantial abuse under an earlier version of Section 707(b), and state that two of the factors considered in *Green*, "[w]hether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the

5

true financial condition" and "[w]hether the petition was filed in good faith," weigh in favor of dismissal. Notably, though, "evaluating these factors … is a discretionary exercise that is best left to bankruptcy judges," who should beware "elevating any single factor above all others as the sine qua non of bad faith." *Janvey v. Romero*, 883 F.3d 406, 412, 414 (4th Cir. 2018). Ultimately, "the bar for finding bad faith is a high one," *id.*, and "[t]he party moving for dismissal under Section 707(a) bears the burden of proving [bad faith] by a preponderance of the evidence," *In re Aiello*, 428 B.R. 296, 299 (Bankr. E.D.N.Y. 2010).

The bankruptcy court found that although the infringement lawsuit may have been the tipping point, it was not the sole reason for the bankruptcy filing, as evidenced by the fact that Blair has more than one creditor and testified about the factors prompting him to file for bankruptcy.[6] The bankruptcy court found that the omissions in Blair's bankruptcy filings were not material, and the Monbos had not offered any evidence that Blair was making more money than he reported in his filings, or that MFI was still working on projects or receiving income. Although Blair had not dissolved MFI, the bankruptcy court found that that did not demonstrate that MFI was still actively operating.

This court sees no error in the bankruptcy court's findings. While Blair omitted certain information from his bankruptcy filings, there is no indication that such information was material or was omitted in bad faith. Further, the court understands the Monbos' argument that Blair must have received income from the film *12 O'Clock Boys* since he was a producer, (ECF 2-41, Hearing Tr. at 38), and since the film did well and was acquired by a distributor, (ECF 2-44, Hearing Tr. at 228–29). But the Monbos have not offered any evidence that Blair *actually* received income from the film, and Blair testified that he was not paid anything. (*Id.* at 240, 244). Therefore, to the extent the Monbos allege that Blair did not report in his bankruptcy filings income received from the film, that allegation

---

[6] Moreover, as the bankruptcy court noted, filing for bankruptcy in response to a large debt, on its own, would likely not constitute bad faith. *See Janvey,* 883 F.3d at 414–15 (noting that "equating a decision to file for bankruptcy in response to a sizeable debt with cause for dismissal would fault debtors for using the Code in precisely the way Congress intended."); *see also In re Remember Enterprises, Inc.*, 425 B.R. 757, 763 (Bankr. M.D.N.C. 2010).

is unsupported. The court also agrees it cannot be inferred that MFI was actively operating simply because the corporation was not dissolved. Finally, there is no evidence that Blair failed to list Taje Monbo's correct address in the creditor matrix on purpose, and the court notes that the fact that Blair listed Deafueh Monbo's address correctly – and she received formal notice – indicates that Blair was not trying to hide his bankruptcy filing from the Monbos.

Accordingly, the court finds that the Monbos have not shown a clear error of fact or incorrect application of law as to the order on the motion to dismiss.

II. Order on the motion for extension of time

The Monbos moved for an extension of time to object to discharge under 11 U.S.C. § 727. Federal Rule of Bankruptcy Proceedings 4004(b)(1) provides "[o]n motion of any party in interest, after notice and hearing, the court may for cause extend the time to object to discharge. Except as provided in subdivision (b)(2), the motion shall be filed before the time has expired." The deadline to object to discharge was May 6, 2019. The Monbos timely filed their motion to extend time on May 3, 2019. The motion was based on the fact that Taje Monbo did not receive actual notice of the bankruptcy filing as his address was not listed in the creditor matrix.[7]

The bankruptcy court relied on the following factors to determine whether cause existed to extend the deadline under Rule 4004(b)(1): "(1) whether the creditor has received sufficient notice of the deadline and information to file an objection; (2) the complexity of the case; (3) whether the creditor has exercised diligence; (4) whether the debtor has refused in bad faith to cooperate with the creditor; and (5) the possibility that proceedings pending in another forum will result in collateral

---

[7] The motion also stated that Deafueh Monbo did not know that the 341 meeting of creditors was mandatory. As Judge Harner explained during the hearing, however, the 341 meeting is not mandatory. There is no dispute that Deafueh Monbo was mailed notice of the bankruptcy filing.

7

estoppel of the relevant issues." *In re Kramer*, 492 B.R. 366, 371 (Bankr. E.D.N.Y. 2013) (citation omitted).[8]

As to notice, "[a] pre-existing debt can be discharged through bankruptcy only if the creditor was on notice of a debtor's bankruptcy filing and the claims bar date." *Bosiger v. U.S. Airways*, 510 F.3d 442, 451 (4th Cir. 2007). Further, "if the 'name[ ], interest[ ], and address[ ]' of a creditor is known, actual written notice is required." *Id.* (citation omitted). But "[c]ourts have consistently held that where a creditor has actual knowledge of the bankruptcy filing . . ., that creditor has not been deprived [of] due process rights." *In re Bateman*, 254 B.R. 866, 870 (Bankr. D. Md. 2000). Therefore, "[b]ankruptcy jurisprudence is replete with cases holding that 'notice is adequate when it is shown that although a party did not receive formal notice, actual notice was received.'" *In re Carolina Internet, Ltd.*, No. 11-32461, 2014 WL 1576790, at *6 (Bankr. W.D.N.C. Apr. 18, 2014) (citing *In re Fusco*, 2008 WL 4298584, at *6 (B.A.P. 6th Cir.2008)). This is consistent with the Supreme Court's pronouncement that "[d]ue process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,'" such that actual notice "more than satisfie[s]" due process rights. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

This court agrees with the bankruptcy court that the Monbos did not demonstrate diligence in pursuing the case or obtaining discovery. The case is not complex, and there is no showing that Blair acted in bad faith in refusing to cooperate with the Monbos. Further, while Taje Monbo did not

---

[8] The Monbos state in their reply that their circumstances meet the "excusable neglect" standard in Rule 9006(b)(1). "However, Rule 9006(b)(1) is subject to paragraph (b)(3) of the rule, which limits the enlargement of certain periods. Pursuant to Rule 9006(b)(3), the time for filing a complaint objecting to a debtor's discharge under Rule 4004(a) may be enlarged 'only to the extent and under the conditions stated' in that rule." *In re Holmes*, 393 B.R. 95, 97–98 (Bankr. M.D.N.C. 2008). Therefore, the proper standard is Rule 4004(b)(1). Some of the cases that the Monbos cite — *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993); *In re Thomson McKinnon Sec., Inc.*, 159 B.R. 146 (Bankr. S.D.N.Y. 1993); and *In re Pappalardo*, 210 B.R. 634 (Bankr. S.D. Fla. 1997) — discuss only the excusable neglect standard under Rule 9006, which is not applicable here.

receive formal notice of the bankruptcy filing, the court finds no clear error in the bankruptcy court's determination that Taje Monbo had actual knowledge of the filing, as evidenced by the suggestion of bankruptcy filed in the civil case by his lawyer, and that he therefore could have timely filed a complaint objecting to the discharge. The Monbos now argue in their appellate brief that the Monbos' copyright attorney never informed Taje Monbo of the bankruptcy. But Taje Monbo did not testify to this at the hearing, even though the notice of bankruptcy was discussed, so the court will not consider it now. (*See* ECF 2-44, Hearing Tr. at 117–21 (discussing notice of bankruptcy filed in the civil case); *id.* at 326 (counsel for Blair noting that Taje Monbo did not testify that he was unaware of the bankruptcy, with no objection from the Monbos)).[9] The Monbos are joint plaintiffs against Blair in the civil case; the notice of bankruptcy was filed in that civil case by a lawyer representing both Deafueh and Taje Monbo on March 4, 2019; and there is no testimony by Taje Monbo that he did not know of the bankruptcy. Further, given that the address Blair listed for Taje Monbo was Deafueh Monbo's address, it appears that Deafueh Monbo would have received a separate notice addressed to Taje Monbo or that the notice she received would have been addressed to them jointly. As such, the court agrees with the bankruptcy court that Taje Monbo had actual knowledge of the bankruptcy filing at least as of March 4, 2019.[10]

---

[9] It does not appear that Taje Monbo testified at all at the hearing. (*See* ECF 2-41, 2-44, July and October Hearing Tr.).
[10] The Monbos cite to *City of New York v. New York, N. H. & H. R. Co.*, 344 U.S. 293, 292 (1953), which held that, in a bankruptcy under Section 77 of the Bankruptcy Act (for reorganization of railroads), actual notice to creditors was required, because although "[t]he argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims," "even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred." But here, Rule 4004(a) sets out the time to object to discharge under § 727, so "the responsibility to inquire into the deadline for filing a [] complaint is not so burdensome as to outweigh the increasing need for the expeditious judicial administration of bankruptcy cases." *In re Price*, 79 B.R. 888, 893 (B.A.P. 9th Cir. 1987), aff'd, 871 F.2d 97 (9th Cir. 1989) (regarding a complaint under § 523(c) and Rule 4007(d), where the creditor's attorney received notice of the filing but the creditor did not); *see also In re S.N.A. Nut Co.*, 198 B.R. 541, 544 (Bankr. N.D. Ill. 1996) ("[i]n cases under Chapter 7 or Chapter 13 of the Code, actual knowledge without notice of the bankruptcy by a creditor whose existence is known to the debtor will satisfy due process concerns with respect to treatment of its claim"). The Monbos also cite to *In re Kelton Motors, Inc.*, 135 B.R. 758, 761 (D. Vt. 1991), but that case involved extending the deadline to file a claim. Further, *Kelton* relies on *In re Rogowski*, 115 B.R. 409, 413 (Bankr. D.Conn. 1990), but as the Second Circuit later noted, *Rogowski* "relie[d] on *City of New York*, erroneously characterizing its holding as stating a due process right rather than a statutory right[.]" *In re Medaglia*, 52 F.3d 451, 457 (2d Cir. 1995).

III. Other claims of error

The Monbos raise other claims of error, which are addressed below.

a. Failure of the trustee or the court to conduct a Rule 2004 examination

The Monbos argue that the trustee and the court erred in failing to conduct a Rule 2004 examination after receiving the Monbos' filing titled "Notice of Fraud and Deceit," (ECF 2-13). Federal Rule of Bankruptcy Procedure 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P. 2004.

The Monbos' argument fails for several reasons. First, the Notice of Fraud and Deceit does not request an examination under Rule 2004, so a motion for examination under Rule 2004 was not before the court. Second, even if it was, the court has discretion as to whether to grant an examination. *In re Kleynerman*, --- B.R. ----, No. 18-26659-BEH, 2020 WL 2621179, at *4 (Bankr. E.D. Wis. May 25, 2020) ("Rule 2004 uses the verb form 'may' and thereby affords courts discretion to limit (or preclude) examinations as justice requires"). Third, the bankruptcy court addressed the Notice of Fraud and Deceit by order entered April 22, 2020, explaining why the court could not act on the Notice as filed. (ECF 2-14). Finally, the Monbos present no support for their argument that the trustee was required to conduct a Rule 2004 examination upon receiving the allegations of fraud.

b. Claims pursuant to 11 U.S.C. § 523

The Monbos argue that the bankruptcy court erred in failing to extend time to file an objection to discharge pursuant to 11 U.S.C. § 523(a)(6), which provides that a discharge under Chapter 7 (11 U.S.C. § 727) does not discharge an individual debtor from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

This issue was addressed during the hearing by the bankruptcy judge. As the judge noted during the hearing, the Monbos did not request a motion for extension of time to object to discharge based on § 523. (ECF 2-44, Hearing Tr. at 336). The Monbos' motion for extension of time related only to extending the deadline under 11 U.S.C. § 727. (ECF 2-16, motion for extension). Therefore,

10

the Monbos did not request this relief in the bankruptcy court, and the bankruptcy court did not commit error in not extending the deadline.

      c.  Phantom Camera

The Monbos argue that the bankruptcy court erred when it concluded that Blair's failure to disclose his phantom camera on his bankruptcy application was not material. The Monbos presented exhibits attached to their closing brief regarding the price of a new and used phantom camera. (ECF 2-43, Ex. 3, 4, and 6). But these exhibits were not presented at trial and therefore were not subject to cross-examination. It is not clear if these exhibits refer to the same type of camera that Blair has. The only testimony at trial regarding the phantom camera was from Eric Blair, who stated that "I have a broken camera that was depreciated because it's
not standard for broadcasts anymore. So it stopped being a viable camera to be used in 2014." (ECF 2-44, Hearing Tr. at 192). He also testified that the value of his phantom camera was zero. (*Id.* at 193). Therefore, the bankruptcy court did not err when it concluded that the failure to disclose the phantom camera was not material.

      d.  Judicial notice

The Monbos argue that the bankruptcy court erred in not taking judicial notice of a document titled "Judicial Notice," (ECF 2-51), which was ECF 60-2 in the bankruptcy court docket. The filing asks the court to take notice of docket entries, but, most significantly, it also asks the court to take judicial notice that "[w]hen allegations of fraud enter into a bankruptcy matter, the next step usually involves obtaining information through Rule 2004 Examination or discovery." This is not a proper "fact" to take judicial notice of, and the Monbos have provided no evidence that this statement is true. Therefore, the court did not err in not taking judicial notice of this.

      e.  Motion for Relief from Order

The Monbos filed in bankruptcy court a motion for relief from order, pursuant to Federal Rules of Bankruptcy Procedure 9023 and 9024. Those rules allow parties to request a new trial, an amended

judgment, or relief from the order. Contrary to the Monbos' argument, though, these rules do not entitle the Monbos to relief, but rather allow them to request it. Further, given that the Monbos appealed to this court, the motion for relief appears to be moot.

IV. Motion to Stay

The Monbos request a stay of the bankruptcy adversary proceeding pending the resolution of the Monbos' appeal. Because this opinion resolves the appeal, the court will deny the motion to stay as moot.

## CONCLUSION

Accordingly, the appeal will be denied, and the bankruptcy court's orders entered December 9, 2019, will be affirmed. The motion to stay will be denied as moot. A separate order follows.

| | |
|---|---|
| 9/9/20 | /S/ |
| Date | Catherine C. Blake |
| | United States District Judge |